UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| VIRGINIA CARRICO, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| ANDREW SAUL, | ) Cause 2:18-CV-355-RLM-MJD |
| COMMISSIONER OF THE | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Virginia Carrico seeks judicial review of a final decision by the Commissioner of Social Security denying her applications for disability insurance benefits ("DBI") and supplemental security income ("SSI") under Title II of the Social Security Act, 42 U.S.C. §§ 423 and 1382 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court vacates in part, and affirms in part, the Commissioner's decision and remands this case for further proceedings consistent with this opinion.

### I. Background

After administrative hearing at which Ms. Carrico and a vocational expert testified, the Administrative Law Judge concluded that Ms. Carrico had numerous severe impairments – osteoarthritis, degenerative disc disease, fibromyalgia, asthma, neurogenic syncope, premature ventricular contractions,

obesity, migraines, borderline intellectual functioning, and anxiety. The ALJ didn't include an accounting of Ms. Carrico's non-severe impairments. The ALJ ultimately concluded that Ms. Carrico's impairments weren't severe enough, either singularly or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ considered listings 1.00Q (musculoskeletal impairments), 1.02 (major dysfunction of a joint, 1.03 (asthma), 1.04 (disorders of the spine), 3.00I (respiratory impairments), 4.00F (cardiovascular impairments), 11.2 (epilepsy), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), and 14.09D (inflammatory arthritis) in her decision.

The ALJ determined that Ms. Carrico's impairments mildly limited jer in understanding, remembering, and applying information. Ms. Carrico had a history of special education and had some difficulty with verbal instructions, but could follow written instructions. The ALJ also determined that Ms. Carrico was mildly restricted in her social functioning. Ms. Carrico interacted well with family and participated in a social group for mothers. Ms. Carrico also interacted well with supervisors and the general public and went shopping, but expressed anxiety with regards to potential interaction with her ex-husband. Her impairments created moderate difficulties with concentration, persistence, and pace.

The ALJ ultimately decided that Ms. Carrico had the residual functional capacity to perform a range of light work with several distinct limitations. These

limitations included certain restrictions to setting and standing; walking; lifting, carrying, pushing, and pulling; climbing; balancing; and exposure to sensitive environments like those creating extreme cold, heat, or those that produce respiratory irritants. The ALJ further decided that although Ms. Carrico had no past relevant work experience, she could perform work perform work that existed in significant numbers in the national economy including as an office machine operator, mail clerk, or office helper. The ALJ concluded that Ms. Carrico wasn't disabled within the meaning of the Social Security Act and so wasn't entitled to disability benefits.

## II. Standard of Review

The issue before the court isn't whether Ms. Carrico is disabled, but whether substantial evidence supports the ALJ's decision that she wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence,

considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). ALJs must "sufficiently articulate their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

III. DISCUSSION

Ms. Carrico argues that the ALJ made several errors requiring remand: 1) that the ALJ's decision regarding her mental impairments is not supported by substantial evidence; 2) that the ALJ erred in its concentration, persistence, and pace determination; 3) that the ALJ erred in its RFC determination as applied to certain mental limitations; 4) that the ALJ failed to properly consider the medical opinion of Dr. Woods; and 5) that the ALJ did not properly weigh Ms. Carrico's own statements regarding her alleged ailments. Ms. Carrico asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

4

## A. The ALJ's Decision Regarding Plaintiff's Mental Impairments

### i. *Depression and Other Severe Impairments*

Ms. Carrico first argues that the ALJ's decision regarding her mental impairments wasn't substantially supported by the evidence in the record. She argues that the ALJ erred in excluding evidence of her depression during step-two of the five-step sequential evaluation ALJs use to determine whether an individual is disabled. 20 C.F.R. 404.1520(A), 416.920(a). The Commissioner responds that the ALJ properly evaluated Ms. Carrico's mental impairments, provided accommodations for those impairments, and didn't err in not analyzing Ms. Carrico's depression.

The record contains evidence that Ms. Carrico suffered from and received treatment for, depression. These included documented diagnoses of depression and evidence of direct medical intervention aimed at addressing it. The ALJ, however, only found Ms. Carrico to have two severe mental impairments – borderline intellectual functioning and anxiety, and didn't include depression in the step-two analysis non-severe impairments. While the ALJ is tasked with the weighing of evidence and determining the severity of a plaintiff's impairments, the ALJ can't disregard entire lines of evidence. Craft v. Astrue, 539 F.3d 668, 675 (7th Cir. 2008); Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ didn't consider or discuss Ms. Carrico's depression. Regardless of whether

Ms. Carrico's depression was ultimately determined to be severe or non-severe, the ALJ should have considered it.

The Commissioner says any error was harmless because the ALJ determined that Ms. Carrico suffered at least some other severe impairments. See Castile v. Astrue, 617 F.3d 923, 926-267 (7th Cir. 2010) ("As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process...."). Reliance on Castile is unavailing. In Castile, the ALJ considered all relevant evidence and determined some ailments severe and others non-severe. Castile v. Astrue, 617 F.3d 927. The ALJ didn't consider Ms. Carrico's depression at all – it received neither a severe or non-severe designation. Its exclusion at step two of the required five step analysis wasn't harmless error. Craft v. Astrue, 539 F.3d at 675; Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009). This exclusion taints the ALJ's analysis at latter stages. Goins v. Colvin, 764 F.3d 677, 681 (7th Cir. 2014) (at stage three, an ALJ must "consider an application's medical problems in combination); Engstrand v. Colvin, 788 F.3d 655, 661 (7th Cir. 2015). Without a proper accounting of Ms. Carrico's depression at step two, the ALJ couldn't adequately determine her functioning at stage three and her overall alleged disability at later stages. This exclusion therefore warrants remand.

*ii.   Ms. Carrico's Concentration, Persistence, and Pace*

Ms. Carrico also argues that the ALJ improperly decided that her severe impairments – anxiety and borderline intellectual functioning – only qualified as mild limitations, leading to an overall determination of her being moderately limited in concentration, persistence, and pace. The Commissioner responds that the ALJ came to the proper concentration, persistence, and pace determination.

Courts generally won't reweigh evidence nor substitute its judgment for that of the ALJ. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000). To do so, the court must find that the ALJ committed a reversable error. Castile v. Astrue, 617 F.3d 926-927. Much of Ms. Carrico's argument essentially attempts to relitigate the ALJ findings, characterizing her various limitations, including her ability to sustain concentration and carry out work-like tasks, as more severe than the ALJ determined. This court isn't in the position to reweigh such evidence. Simila v. Astrue, 573 F.3d at 513; Powers v. Apfel, 207 F.3d at 434–435. The ALJ considered medical record opinions of Dr. Woods, Dr. Neville, Dr. Larsen, and Ms. Stacey Smith N.P as well as personal testimony. The court can't say that the ALJ reversibly erred or failed to create a logical bridge between the facts in the record and its determination of moderate concentration, persistence, and pace determination. Jones v. Astrue, 623 F.3d at 1160.

Ms. Carrico also argues that the ALJ failed to account for certain

7

limitations, like her need for reminders in taking medication. The ALJ didn't explicitly cite Ms. Carrico's need for medication reminders, but those considerations were incorporated into the concentration persistence and pace determination. Contemporary medical sources support that determination. Rice v. Barnhart, 384 F.3d 363, 370-371 (7th Cir. 2004).

### B. Ms. Carrico's Residual Function Capacity

*i. Mental Impairments and Limitations*

Ms. Carrico next alleges that the ALJ's residual functional capacity finding wasn't supported substantial evidence. Ms. Carrico argues that the omission of the depression evidence and deficiency in evaluating her concentration, persistence, and pace limitations constituted reversible error. The Commissioner responds that the ALJ properly determined Ms. Carrico's residual function capacity.

The ALJ's residual function capacity determination is inherently deficient since it doesn't consider Ms. Carrico's depression, which the court already found required remand. The ALJ also disregarded certain medical opinions pertaining to Ms. Carrico's anxiety in its residual function capacity analysis. While an ALJ is free to consider and rule contrary to evidence contained a given medical opinion, it must provide a reasoned explanation. Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010). Even if both anxiety and depression were deemed non-severe, the ALJ should have addressed them within the greater residual function

capacity analysis, or outlined why they were not considered. 20 C.F.R. §404.1545(a)(2). The ALJ did not do so.

Ms. Carrico also contends that the ALJ restrictions to "simple routine tasks" doesn't embody her concentration, perception, and pace limitations. Again, Ms. Carrico is essentially asking the court to reweigh the evidence considered by the ALJ and to reach a different conclusion favorable to her. Simila v. Astrue, 573 F.3d at 513; Powers v. Apfel, 207 F.3d at 434–435. The ALJ considered an array of medical evidence in determining Ms. Carrico's residual function capacity, including Ms. Carrico's own statements herself and opinions from treating and consultative physicians and a nurse practitioner. A review of the record indicates that the ALJ properly considered Ms. Carrico's own statements and weighed them accordingly. Walker v. Brown, 834 F.3d 635, 641 (7th Cir. 1987) ("An individual's statement as to pain or other symptoms shall no alone be conclusive evidence of disability."). Further, the ALJ properly considered medical evidence from various physicians, including a medical opinion from Dr. Buckle that Ms. Carrico claims supports a different residual function capacity determination. Ms. Carrico might be right that Dr. Buckles's opinion that she had some difficulty following instructions supports a determination more limiting than what the ALJ ultimately decided, the ALJ weighed that evidence along with evidence that supported his finding. Not all limitations require a maximum restriction. Rice v. Barnhart, 384 F.3d 363, 370-71 (7th Cir. 2004) ("More importantly, there is no doctor's opinion contained in the record which

9

indicated greater limitations than those found by the ALJ."); Scott Sullivan, 898 F.2d 519, 523 (7th Cir. 1990). It can't be said that the ALJ committed reversible error because it came to determination different from what Ms. Carrico wanted.

No other alleged shortcomings by the ALJ meet the requirements needed to find reversible error. Ms. Carrico argues that her lack of high school diploma and special needs education don't align with the ALJ's restriction to certain unskilled labor. Considering various consultative and treating medical opinions, the ALJ came to a reasoned conclusion that Ms. Carrico's borderline intellectual functioning didn't preclude her from any and all labor. Similarly, the ALJ found that Ms. Carrico's social functioning caused mild limitations and didn't preclude her from any and all social contact. Those findings have support in the record in various medical opinions, including those of Dr. Neville and Dr. Larsen. That the analysis of Ms. Carrico's social functioning was spread throughout the ALJ's opinion doesn't negate the ALJs overall findings. Buckhanon ex rel. J.H. v. Astrue, 368 F.App'x 674, 678-79 (7th Cir. 2010) ("There is requirement of such tidy packaging [...]; we read the ALJ's decision as a whole and with common sense."); Cihlar v. Berryhill, 706 F.App'x 881, 883 (7th Cir. 2017) (an ALJ is not required employ "particular wording [...] if alternative phrasing adequately accounts for the [plaintiff's] limitations."). The ALJ committed no reversible error in this regard.

*ii. Dr. Woods's Opinion*

Ms. Carrico further says the ALJ failed to consider and address certain relevant findings of Dr. Woods in its RFC analysis. She argues that the ALJ failed to consider certain physical movement restrictions that supported a finding of disability.

The ALJ considered Dr. Woods's opinion "somewhat persuasive," but directly relied only on specific portions of the opinion in its decision. "An ALJ mustn't selectively consider medical reports." Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009). It is also "not enough for the ALJ to address mere portions of a doctor's report." Id. at 678. "Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, [he] has to decide what weight to give that opinion" and provide "good reasons" for doing so. Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010). From the record, it appears that Ms. Carrico might be right that the "ALJ identified pieces of evidence in the record that supported her conclusion that [Ms. Carrico] wasn't disabled, but she ignored related evidence that undermined her conclusion." Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014). Specifically, Dr. Woods's assessment offers specific physical limitations that the ALJ didn't discuss, including clear lifting and reaching restrictions. The court needn't resolve that issue in today's decision, but urges the Commissioner to expand the discussion on remand.

*iii. Ms. Carrico's Own Statements*

Ms. Carrico asserts that the ALJ erred in the treatment of her own statements regarding her pain. The Commissioner responds that the ALJ properly considered Ms. Carrico's statements in its residual function capacity analysis and was not "patently wrong" in its treatment of these statements. Summer v. Berryhill, 864 F.3d 523, 528 (7th Cir. 2017); Curvin v. Colvin, 778 F.3d 645, 651 (7th Cir. 2015).

A plaintiff's own "assertion of pain is not sufficient to create disability." Stuckey v. Sullivan, 881 F.2d 361, 362 (7th Cir. 1989) (citing Arbogast v. Bowen, 860 F.2d 1400, 1404 n.5 (7th Cir, 1988). The ALJ discussed Ms. Carrico's pain and pain management, specifically her use of narcotics. The ALJ also considered Ms. Carrico's daily activities along with her own statements about her ability, or inability, to complete such activities. The ALJ looked at Ms. Carrico's ability to care for her daughter, babysit for her autistic son, and manage her own ailments and medication. After doing so, the ALJ came to a decision different from Ms. Carrico's about her limitations, which is permissible. Alvarado v. Colvin, 836 F.3d 744, 760 (7th Cir. 2016) ("But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to asses whether 'testimony about the effects of his impairments was credible or exaggerated.'") (quoting Loveless v. Colvin, 810 F.3d 502, 508 (7th Cir. 2016). To succeed on this claim, Ms. Carrico must show that the ALJ was "patently wrong" – a standard she

hasn't met. Summer v. Berryhill, 864 F.3d at 528; Curvin v. Colvin, 778 F.3d at 651.

*iv. The ALJ's Step-Five Employment Determination*

Ms. Carrico argues that the ALJ erred in its determination that significant jobs existed in the national economy for Ms. Carrico. She says that an absence of physical balancing hypothetical questions posed to the vocational expert caused an incorrect determination that Ms. Carrico was able to complete the jobs listed in the ALJ's opinion. The jobs identified by the vocational expert – machine operator, mail clerk, and office helper – don't require balancing. Dictionary of Occupational Titles 207.685-014, 209.685-026, 239. 568-010. The absence of these questions had no effect on the determination that certain jobs existed in the national economy in significant numbers that are available to Ms. Carrico. Error, if any, of an absence of physical balancing limitations in the hypothetical questions was harmless. Schomas v. Colvin, 732 F.3d 702, 707 (7th Cir. 2013) (citing McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir 2011) ("But this kind of error is subject to harmless-error review, and we will not remand a case to the ALJ for further explanation if we predict with great confidence that the result on remand would be the same.").

IV. Conclusion

The court VACATES in part, and AFFIRMS in part, the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:     July 30, 2019

/s/ Robert L. Miller, Jr.

Judge, United States District Court


Distribution:

All electronically registered counsel of record via CM/ECF.